Mr. Chief Justice Bingham
delivered the opinion of the Court:
This is a proceeding in certiorari to quash an alleged illegal assessment made against lots described as lots 2, 3, 4. 5, 6, 7, 16, and 17 in square 6L9, which the petitioner jointly with one William Bates has owned for twenty years last past. Square 619 is bounded on the north by New' York avenue, on the south by M street, on the east by North Capitol street, and on the west by First street, all in the northwest quarter of the city. Lots 2, 3, 4, 5, 6, and 7 adjoin each other, and each has a frontage of 68 feet on M street. Lot 16 has a frontage on New York avenue 'of 250 feet 8 inches, and on North Capitol street, 239 feet 11 inches. Lot 17 fronts 86 feet on North Capitol street.
*77 To the petition the District of Columbia has made a return.
It appears that on the 21st of February, 1871, the organic act, as it is called, relating to this District was passed, and .the Board of Public Works created. On the 20th of April, 1871, by an amendatory act, the Board of Public Works was authorized by Congress to enter upon its functions as soon as the members should be qualified. On the 25th of April, 1871, the Board of Public Works, as shown by the return of the District of Columbia, held its first meeting and entered into the discharge of its functions as an organized body. On the 27th of April the city councils passed an ordinance by which they attempted to authorize the mayor to contract for paving and curbing the footways and gutters on two sides of square 619.
On the 8th of May the mayor instructed the city auditor to order the execution of this ordinance of April 27. On the 1st day of June, 1871, the organic act went into full operation. All the city offices were then abolished. On the 10th of August the legislative assembly passed an act prescribing the mode of assessment, &c., for special improvements by the Board of Public Works. On the 25th of September, E. L. Stanton, acting governor, approved an assessment on lots 1, 16, 17 and 18 for $5,365.69. On the 6th day of October, 1871, E. L. Stanton, acting governor, approved assessment for $4,083.35 on the remaining lots. The first two assessments were signed by William Forsyth, first assistant engiueer of the Board of Public Works; the second by William Forsyth, as district surveyor, assistant engineer of the Board of Public Works, and superintendent and inspector, &c., and by Eugene Daly and Timothy Foley, Assistant Commissioners.
We only notice all these acts subsequent to the passage of the ordinance for the purpose of showing that the Board of Public Works, as a body, never took any part in this improvement, never passed any order in relation to it — . *78 never formally, as a body, approved of any assessment or took any action in relation thereto.
By the organic act wpon the organization of the Board of Public Works all of the legislative functions of the councils of the city of Washington ceased, and the Board of Public Works were authorized by the organic act to exercise the powers of the municipal corporation with reference to the streets. Complete and full control, care and custody of the streets and public grounds of the city of Washington, which had been exercised theretofore by the-councils of the city of Washington was thereby conferred upon the Board of Public Works.
By the provisions of ah amendatory act the Board of Public Works were to exercise their functions and to come into full power in relation to everything given to them bv the original act as soon as the members of the Board were qualified. The return here shows that they were qualified and organized and began business on the 25th of April, 1871. It would follow that from that date the city councils of the city of Washington were deprived of every power over the streets of the city. They had no power to pass an ordinance for the improvement of any street or to authorize the mayor of the city to make any contract in reference to them on the 27th of April, 1871.
The contract, which was authorized by the mayor and subsequently made by the auditor, was utterly void because of want of power on the part of the councils to authorize it, or the mayor or the auditor of the city to enter into or execute any such contract. It will necessarily follow that all of the steps thereafter were null and void, and that no legal charge could be made against the property by anybody by reason of such proceeding.
It is claimed that this plaintiff subsequently asked for a revision of the assessments under the act of 1878, and that this amounts to a waiver upon his part of any irregularity or illegality that might have occurred before that time; *79 that, inasmuch as there was a re-assessment the re-assessment would be valid.
The original assessment having been made without any authority 'whatever, and being void absolutely, could not be given life years afterwards by the mere request of the owners of the property to the Board of Public Works, which never had had any legal connection with that assessment, as indeed no one else had, to revise such assessment. The authority of that board did not reach to the revision of an assessment of that character or to a merely pretended assessment. It was only such an assessment as had been made under the apparent forms of law and by a body who, at the time, had authority to make an assessment that could be revised under the act of 1878.
It is objected that this plaintiff shows that he is a tenant in common with another party, or joint owner of these lots, and that he should join his co-tenant with him in this petition.
We have considered the point and we think it may be, as suggested b}? counsel, that his co-owner, for some reason or other, would not join with him. But if the facts are true as stated in his petition and in the return, he having a distinct and valuable interest in this property, is entitled by himself to ask that the court shall remove this legal incumbrance and cloud upon his property at his own suggestion. He has an independent right and interest in the property which he as owner may protect.
We think this objection is not well taken and the assessment will be quashed.